```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JACK LOCKETT,
                                          DECISION AND ORDER
                Petitioner,               No. 05-CV-6731T

    -vs-

JAMES T. CONWAY,

                Respondent.
_____
```

## I.   Introduction

*Pro se* petitioner Jack Lockett ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered April 18, 2001, in New York State, County Court, Erie County, convicting him, after a jury trial of Attempted Assault in the First Degree (N.Y. Penal Law ("Penal Law") §§ 110, 120.10[1]), two counts of Burglary in the First Degree (Penal Law § 140.30[2], [3]), Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02[1], Menacing in the Second Degree (Penal Law § 120.14[1]), two counts of Criminal Contempt in the First Degree (Penal Law § 215.51[b][iii][iv]), Tampering with a Witness in the Third Degree (Penal Law § 215.11[1]), and Aggravated Harassment in the Second Degree (Penal Law § 240.30).

For the reasons stated below, the petition is denied.

## II.  Factual Background and Procedural History

Petitioner and Diana Everett ("Diana" or "the victim") lived together for over 25 years and had a 21 year old son, who lived

with Petitioner. Trial Transcript [T.T.] of 02/06/01 57-58. In the summer of 2000, Diana left Petitioner and moved in with her sister, Patricia Everett, at 37 Harvard Place ("the premises" or "37 Harvard Place"). The premises was owned by Petitioner's mother. T.T. of 02/06/01 58-68, 153-156. On August 7, 2000, Petitioner worked in the basement at the premises as a handyman for his mother. T.T. of 02/06/01 64-69, 154-155. Diana was alone in the house, as Patricia was out of town. T.T. of 02/06/01 59, 155-156. At about 6:00 p.m., Petitioner arrived at the premises and called Diana out onto the front porch, trying to convince her to come back to him. Diana told Petitioner that the relationship was over, and Petitioner eventually left the premises. T.T. of 02/06/01 66, 114. Diana ate dinner that evening, watched television, and went to bed. At about 2:30 a.m., Diana was awakened by noises and discovered Petitioner in her bedroom. Petitioner got on top of Diana and told her he was there to cut her throat, and that he had killed before. Petitioner punched Diana, slashed her several times with a knife, and repeatedly told her he was going to kill her and also threatened to kill her father. T.T. of 02/06/01 72-77, 145-147. Diana struggled with Petitioner as he demanded a reason for him to let her live. Diana begged for her life, telling Petitioner that her son needed her. Petitioner eventually relented and left the premises, but, on his way out, threatened to kill Diana if she called the police. T.T. of 02/06/01 76-78.

Diana called her sister, Jackie Everett, who called the police and other family members. T.T. of 02/06/01 78-81, 162-169, 175. An ambulance arrived and transported Diana to Erie County Medical Center where she was treated for multiple defensive knife wounds on her hands, and various other wounds on her arms, thighs and head. T.T. of 02/06/01 84-86, 93-96; T.T. of 02/08/01 271-76, 296-302.

Defendant was arrested at his home at about 5:00 a.m. T.T. of 02/08/01 235-238.

Diana received a no-contact order of protection against Petitioner barring him from any contact with her. T.T. of 02/06/01 100-102. Despite the court order, Petitioner called her at work on September 5, 2000 four times, making threatening remarks and asking her if she was going to pursue the charges against him. T.T. of 02/06/01 102-105. After the fourth call, Diana called the authorities. T.T. of 02/06/01 105-06.

On February 6, 2001, a jury trial commenced. Petitioner testified to the following: that he entered the premises with a master key for purposes of getting a water damaged ceiling tile that he had noticed the day before; that, upon entering the premises, he looked to see where Diana was sleeping and discovered her in bed with another man; that he and Petitioner argued in the doorway to the bedroom to the room and that he held the knife high as they argued; that he did not threaten to kill her or slit her throat; that Diana grabbed at his wrist and arms to get the knife away from him; that he did not know anything about the injuries sustained to Diana's head or leg; that he dropped the knife in the

-3-

bushes when he saw police got out of their car; and that he placed calls to Diana at work, but did not threaten her. T.T. of 02/08/01 330-341, 342-45, 354, 363, 388, 410. At the close of the trial, Petitioner was found guilty on nine counts of the indictment. He was sentenced as a second felony offender to two twenty year terms of imprisonment on the burglary convictions, fifteen years on the attempted assault conviction, and to lesser concurrent terms on the remaining convictions.

Petitioner appealed his judgement of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on November 21, 2003. People v. Lockett, 1 A.D.3d 932 (4th Dep't. 2003). Petitioner sought leave to appeal to the New Court of Appeals, which was denied on February 26, 2004. People v. Lockett, 1 N.Y.3d 630 (2004).

On May 18, 2005, Petitioner filed an application for a writ of error coram nobis, which was summarily denied on September 30, 2005. People v. Lockett, 21 A.D.3d 1443 (2005). Petitioner sought leave to appeal the denial by the Appellate Division, Fourth Department, which was denied on November 29, 2005. People v. Lockett, 5 N.Y.3d 883 (2005).

This habeas petition followed, wherein Petitioner raises the following three grounds for relief: ineffective assistance of appellate counsel, deprivation of the right to be present at material stages of the prosecution, and evidentiary errors committed by the trial court.

-4-

**III. General Principles Applicable to Habeas Review**

    **A.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified

the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

B. **Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

## IV. Petitioner's Claims

**1. Ineffective Assistance of Appellate Counsel**

Petitioner contends that he was denied his Sixth Amendment right to effective assistance of appellate counsel. In particular, he argues that appellate counsel was ineffective for failing to raise the following issues on appeal: (1) that the evidence was insufficient to support the convictions for the two counts of burglary, attempted first degree assault, and third degree tampering with a witness; (2) that the trial court erroneously denied a requested jury instruction on unlawful entry; and (3) that trial counsel was ineffective. Petition [Pet.] ¶22, Exhibit [Ex.] D, Point I. Petitioner raised this claim in his application for coram nobis, which was summarily denied by the Appellate

Division. Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim. Sellen v. Kuhlman, 261 F.3d at 303, 311-12 (2d Cir. 2001).

It is well-settled law that a petitioner claiming ineffective assistance of appellate counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668 (1984); Aparicio, 269 F.3d at 95. A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight). Counsel is not required to raise all colorable claims on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." Id. at 751-53. And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90. The Strickland standard of ineffective assistance of counsel applies equally to trial and

appellate counsel.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994).

Here, Petitioner contends that appellate counsel was ineffective for failing to raise, on direct appeal, that the evidence was insufficient to support the convictions for the two counts of burglary, attempted first degree assault, and third degree tampering with a witness.  The record, however, reflects that appellate counsel did, in fact, argue in a well-researched brief that the evidence was insufficient to support the burglary and assault convictions.  See Appellant's Brief [A.B.], Points II, V.  For both of these offenses, appellate counsel stated the elements that needed to be proven, and persuasively argued the perceived evidentiary shortcomings.  Id.  Regarding Petitioner's remaining contention that the evidence was insufficient to support the tampering conviction, the record shows the existence of testimonial evidence from both Petitioner and the victim that tended to establish each element of the offense.[1]  Thus, this Court cannot find that appellate counsel's decision not to raise this one issue on direct appeal was unreasonable given the circumstances.

---

[1] "A person is guilty of tampering with a witness in the third degree when, knowing that a person is about to be called as a witness in a criminal proceeding[,] he wrongfully compels or attempts to compel such person to absent himself from, or otherwise to avoid or seek to avoid appearing or testifying at such proceeding by means of instilling in him a fear that the actor will cause physical injury to such person or another person." Penal Law § 215.11[1].  Petitioner testified that, despite the existence of a no-contact order, he called the victim witness at work on September 5, 2000 four times.  The victim testified that when Petitioner called her, he made threatening remarks and asked her if she was going to pursue the charges against him.  These threats placed the victim in fear, and after the Petitioner's fourth call, the victim called the authorities.  T.T. of 02/06/01 102-106; T.T. of 02/08/01 355-359.

Next, Petitioner contends that appellate counsel was ineffective for failing to argue, on direct appeal, that the trial court erroneously denied a requested jury instruction on unlawful entry. Again, the record belies this claim. The record reflects that appellate counsel thoroughly presented this issue for appellate review and argued it persuasively in Point VII of his brief. See A.B., Point VII.

Third, Petitioner alleges that appellate counsel was ineffective for failing to argue, on direct appeal, that trial counsel was ineffective. He has not, however, set forth the factual basis for this argument in the present habeas petition. Thus, this portion of Petitioner's claim is based on a review of the supporting facts provided in his coram nobis application. There, Petitioner alleged, *inter alia*, that appellate counsel should have argued that trial counsel was ineffective for: (1) failing to move to dismiss the attempted assault conviction on the ground that Petitioner committed a completed assault; (2) failing to request unspecified counts be submitted to the jury in the alternative; and (3) failing to preserve a challenge to the insufficiency of the evidence supporting the tampering conviction. See Petitioner's Coram Nobis Application [C.N.A.], 4-5, 11. In reviewing this claim, the Court cannot find that appellate counsel's decision to forego raising an ineffective assistance of trial counsel argument on direct appeal was unreasonable given that

each of the above underlying claims (numbered one-three) are, individually and/or collectively, meritless, as discussed below.

Claims one and two lack merit because Petitioner's contentions appear to be based on a misreading of non-precedential and factually dissimilar New York State caselaw holding that a defendant cannot be convicted of attempting to commit a crime and for committing the crime, and on the erroneous belief that a completed assault is a lesser included offense of attempted murder. See C.N.A., 4-5. Petitioner, however, was not convicted of assault and attempted assault.[2] Moreover, Petitioner has failed to indicate -- other than by conclusory statement based on an erroneous understanding of the law -- which counts trial counsel should have submitted to the jury in the alternative.

Claim three, as discussed above, is meritless because the proof at trial -- established through testimonial evidence from both Petitioner and the victim witness -- was sufficient to support the tampering conviction.

Thus, Petitioner has failed to overcome the presumption that appellate counsel's decision to forego raising any or all of the above meritless arguments and instead choosing to put forth other stronger arguments was reasonable given the facts and circumstance of the case. Because Petitioner has failed to meet the reasonableness prong of Strickland, this Court need not address the

---

[2] Petitioner was charged with and acquitted of attempted murder and charged with and convicted of attempted first degree assault. Under New York State law, these are distinct crimes although, as Petitioner contends, they contain statutory elements that are similar to each other.

prejudice prong. See Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) ("'[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.'") (alterations in original) (quoting Strickland, 466 U.S. at 697)).

Accordingly, the state court's determination of this issue was neither "contrary to" nor an "unreasonable application of" settled Supreme Court law. The claim must be dismissed.

## 2. Deprivation of the Right to be Present at Material Stages of the Prosecution

Petitioner contends that he was deprived of his right to be present at all material stages of his trial.[3] Pet. ¶22, Ex. D, Point II. Petitioner raised this issue on direct appeal, requesting that the court hold the appeal in abeyance, reserve decision, and remit it to the County Court for a reconstruction hearing. See A.B., Point I. The Appellate Division rejected the claim, finding that it was "not reviewable because [Petitioner] failed to provide an adequate record for appellate review." Lockett, 1 A.D.3d at 932 (internal citations omitted). Notably, however, when this claim was raised on direct appeal, it was framed mainly as a violation of New York State law, and, as such, is not cognizable in this Court on habeas review.

---

[3] Petitioner does not indicate in his habeas petition which material stages of his prosecution he was allegedly excluded from or how said stages were material to the prosecution. Presumably, Petitioner is referring to the same three sidebar conferences -- during jury selection and trial -- that he references in his brief on appeal. see A.B., Point I.

Under New York law, a defendant is entitled, pursuant to C.P.L. § 260.20, to be present at sidebar discussions when the merits of the case or "prospective jurors' backgrounds and their ability to weight the evidence objectively" are discussed. People v. Antommarchi, 80 N.Y.2d 247, 250 (1992). However, "[f]ederal standards regarding a defendant's presence at sidebars are less stringent than New York's standards." Nichols v. Kelly, 923 F.Supp.420, 426 (W.D.N.Y. 1996) (holding that a habeas petitioner's presence at each sidebar held during jury selection was not required by the United States Constitution) (citing Gaiter v. Lord, 917 F.Supp. 145, 152 (E.D.N.Y. 1996) ("[t]he federal constitution generally does not require a defendant's presence at sidebar conferences.")). Moreover, Courts in this Circuit have noted that there is no clear Supreme Court precedent supporting a claim that absence from a sidebar conference during voir dire violates the Sixth Amendment. See e.g., Perez v. Greiner, 00 Civ. 5504, 2005 U.S. Dist. LEXIS 4019, (S.D.N.Y. Mar. 14, 2005) ("[a]lthough the pre-screening and impaneling of jurors is a material stage of trial at which a defendant has a constitutional right to be present, there is no clear Supreme Court precedent supporting a claim that absence from a sidebar conference during voir dire violates the Sixth Amendment."). Others have declined to find that a claim such as Petitioner's -- that is rooted in a violation of state law -- is even cognizable on habeas review. See e.g., Diaz v. Herbert, 317 F. Supp.2d 462, 473 (S.D.N.Y. 2004) ("[E]ven if [petitioner's]

rights under Antommarchi were violated, it does not rise to the level of a federal constitutional violation. Therefore, any alleged violation of these rights is not cognizable on habeas review."); Johnson v. McGinnis, 99 Civ. 11231, 2001 U.S. Dist. LEXIS 8935 (S.D.N.Y. June 29, 2001) (habeas review precluded because right to be present at sidebar during voir dire derives from New York state statutory law).

Thus the claim is not cognizable in this Court on habeas review and must be dismissed.

## 3. Trial Court Committed Evidentiary Error

Petitioner contends that the trial court committed evidentiary error by allowing the victim to testify that, during the assault, Petitioner stated that he had killed before. Pet. ¶22, Ex. D, Point III. Petitioner raises this issue for the first time in his habeas corpus petition. To this extent, the claim is unexhausted. See 28 U.S.C. § 2254(b)(1); Daye, 696 F.2d at 190-91. However, because the claim is a matter of record and could have been raised on direct appeal but was not, the claim is deemed exhausted, but procedurally defaulted. See Grey, 933 F.2d at 120-21; C.P.L. § 440.10(2)(c).

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations

-14-

omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). Petitioner has failed to show cause and prejudice or that this Court's failure to review the claim will result in a miscarriage of justice.

In any event, even if Petitioner were able to overcome the procedural bar, his claim is a matter of state evidentiary law and, as such, is not cognizable in this Court on habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a). Therefore, the claim is denied.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with

United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

                                        S/Michael A. Telesca

                                        _____
                                        HONORABLE MICHAEL A. TELESCA
                                        United States District Judge

DATED:     November 16, 2009
            Rochester, New York